UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEROME COLLINS,

               Petitioner,

 v.                                                            Civil Action No.
                                                                   9:08-CV-01230 (TJM)

DEBORAH G. SCHULT,

               Respondent.
_____

APPEARANCES:

FOR PETITIONER:

JEROME COLLINS, 10546-067
 Petitioner *Pro Se*
FCI Ray Brook
P.O. Box 300
Ray Brook, New York 12977

FOR RESPONDENT:

| | |
|---|---|
| OFFICE OF THE UNITED STATES ATTORNEY | CHARLES E. ROBERTS, ESQ. |
| 100 S. Clinton Street | Asst. United States Attorney |
| Syracuse, New York 13261-7198 | |

THOMAS J. MCAVOY
SENIOR U.S. DISTRICT JUDGE

## **ORDER**

Petitioner Jerome Collins, an inmate at the Federal Correctional Institution in Ray

Brook, New York, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. On October

25, 2001, Petitioner was sentenced in the United States District Court for the Eastern District

of New York to serve an aggregate term of 204 months in federal prison following his

conviction for interference with commerce by threat or violence (robbery) in violation of 18

U.S.C. § 1951 and § 3551 eq seq. (two counts) and brandishing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Dkt. No. 1 at 2. *See United States v. Collins*, No. 1:00-CR-01079, at Dkt. Nos. 50-51. The Second Circuit affirmed his conviction in a Mandate issued August 14, 2002. *Collins*, No. 1:00-CR-01079, at Dkt. No. 66.

Petitioner does not contest his conviction. Rather, he asserts that the Federal Bureau of Prisons ("BOP") incorrectly calculated his custody classification score. Dkt. No. 1, Memorandum of Law ("Mem.") at 5-7. Specifically, Petitioner asserts that he was incorrectly assessed six points[1] in his Base Custody Score for having a history of serious violence based upon a prior assault conviction because there is no documented evidence that the assault occurred or that there was a finding of guilt. Dkt. No. 1, Mem. at 2. Respondent has filed a response, together with a memorandum of law and the pertinent records. Dkt. No. 8. For the reasons that follow, the petition is **denied and dismissed.**

I. **Background**

The following factual summary is derived from the records attached to the petition and to Respondent's Response. Federal inmates are designated and classified within the BOP based on their security and custody levels. *See* Dkt. No. 8-1, Declaration of Ralph Miller ("Declaration") at 2; Dkt. No. 8-1, Ex. A. (Program Statement #P5100.08 - Inmate Security Designation and Custody Classification, Sept. 12, 2006). During custody classification, inmates are assigned a level of supervision based on their criminal history and institutional

---

[1] Respondent states that Petitioner was initially assessed six points for the assault because it occurred between five and ten years prior to the calculation of his custody classification score. Dkt. No. 8, Resp't Mem, at 1 n. 1. Petitioner is now being assessed four points because the assault was more than ten years ago but less than fifteen years ago. *Id.*

2

behavior and adjustment. Dkt. No. 8-1, Ex. A, Ch. 6 at 1. Custody levels indicate how much staff supervision a particular inmate requires. *Id.* Male correctional institutions are classified into five different security levels: Minimum, Low, Medium, High, and Administrative. Dkt. No. 8-1, Declaration at 2; Ex. A at Ch. 1 at 1.

To determine an inmate's custody and security levels, the BOP scores the inmate using a Custody Classification Form. The form is designed to assist BOP officials in evaluating the factors that are relevant in determining the level of security a particular inmate needs while incarcerated. Dkt. No. 8-1, Declaration at 2. Inmates receive various scores on factors such as whether he or she has a detainer, the severity of the current offense, the nature and extent of the inmate's history of violence or disciplinary reports, and program participation. Dkt. No. 8, Resp't Mem. at 2-3 (citing Dkt. No. 8-1, Ex. A, Ch. 6). The security level is determined by adding together the points an inmate receives in each category. Dkt. No. 8-1, Declaration at 2 (citing Ex. A, Ch. 6 at 1-2).

One of the factors BOP officials consider during the classification process is an inmate's history of violence. Dkt. No. 8-1, Ex. A, Ch. 6 at 6-7. Past incidents of violence may be either minor or serious. *Id.* A minor history of violence is defined as "[a]ggressive or intimidating behavior which is not likely to cause serious bodily harm or death (e.g., simple assault, fights and domestic disputes, etc.)." *Id.* at 7. A serious history of violence is one that includes "[a]ggressive or intimidating behavior which is likely to cause serious bodily harm or death (e.g., aggravated assault, domestic violence, intimidation involving a weapon, incidents involving arson or explosives, rape, etc.)." *Id.* There must have been a finding of guilt in order for the BOP to assess points based on a past incident of violence. *Id.* at 6. In determining the

severity of the incident of violence, the BOP may take into account the "offense behavior underlying the conviction regardless of the ultimate offense of conviction." Dkt. No. 8-1, Declaration at 2 (citing Ex. A, Ch. 6 at 6-7). The recency of the violent incident is also considered when assessing classification points. Dkt. No. 8-1, Declaration at 2-3. Finally, documented evidence from juvenile offenses may be considered "unless the record has been expunged or vacated." Dkt. No. 8-1, Ex. A, Ch. 6 at 7.

A pre-sentence report was prepared in anticipation of Petitioner's sentencing hearing for his 2001 federal conviction. *See* Dkt. No. 1, Ex. 1. According to the report, Petitioner was arrested on August 17, 1995 for an assault charge when he was fifteen years old. *Id.* at ¶ 32. Although the arrest did not appear on Petitioner's criminal records check, he reported it during his pre-sentence interview on the advice of counsel. *Id. See also* Dkt. No. 1, Ex. 2 (transcript excerpt at 5). Petitioner admitted that he was arrested for a "shooting charge" and was sentenced as a youthful offender to one year in custody by the Staten Island Supreme Court. Dkt. No. 1, Ex. 1 at ¶ 32. Based upon the information Petitioner provided, a Federal Bureau of Investigations agent learned the arrest date of the assault, but could not obtain further information because the case appeared to be sealed. *Id.* The probation officer who prepared the pre-sentence report recommended that Petitioner be assessed two criminal history points for the assault. *Id.*

On December 17, 2001, a BOP staff member initially classified Petitioner's custody and security levels. *See* Dkt. No. 8-1, Ex. C. The staff member found that Petitioner had a serious incident of violence within the ten years preceding his federal conviction based upon the assault. *Id.* ("VIOLENCE: 5-10 YRS SERIOUS"). Petitioner was designated to FCI Ray

Brook, a medium security facility. *Id.*

On April 28, 2008, a Request for Transfer/Application of Management Variable form was prepared on behalf of Petitioner by staff at FCI Ray Brook. *See* Dkt. No. 8-1, Ex. B. The request recommended that Petitioner be transferred to "any appropriate Low security level facility" and indicated that "[t]he Sentence Length Public Safety Factor is no longer applicable due to the passage of time. The BP-337 reflects a violence history of serious 5-10 years, the BP-338 no longer reflects this due to the fact that the case was sealed." *Id.*

The transfer request was evaluated by Ralph Miller, a Designator with the BOP. *See* Dkt. No. 8-1, Declaration at 1, 3. Miller determined that Petitioner should receive four points for a history of serious violence based upon the 1995 assault, resulting in a security classification of 19. *Id.* at 4. In making that determination, Miller reviewed the pre-sentence investigation and Petitioner's initial classification form that designated him to FCI Ray Brook. *Id.* at 3-4. He found that the 1995 assault was properly considered for purposes of determining whether Petitioner had a prior history of violence because (1) Petitioner was sentenced to serve one year in custody for the assault, which could not have happened absent a conviction; (2) the pre-sentence investigator assessed two criminal history points for the 1995 assault, which would not have happened absent a conviction; (3) the sentencing court accepted the pre-sentence report without modification; and (4) Petitioner described the assault case as a "shooting incident", which "constitutes aggressive behavior which is likely to cause serious bodily harm or death and is more serious than the example of 'intimidation involving a weapon' provided in the definition of 'serious history of violence.' " *Id.* at 4. Since Petitioner's security total of 19 fell within the range of a medium security facility, Miller denied the request

to transfer Petitioner to a low security facility. *Id.* at 4 (citing Ex. A, Ch. 1 at 2). *See* Dkt. No. 8-1, Ex. D.

Petitioner exhausted his administrative remedies without success. *See* Dkt. No. 1, Mem. at 2-5; Dkt. No. 8, Resp't Mem. at 6. This petition followed.

**II . DISCUSSION**

Habeas corpus relief is available if a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A writ of habeas corpus pursuant to 28 U.S.C. § 2241 is available to federal prisoners who challenge the execution of their sentence, rather than the imposition of the sentence. *See Adams v. United States*, 372 F.3d 132, 134-35 (2d Cir. 2004); *Jiminian v. Nash*, 245 F.3d 144, 146-47 (2d Cir. 2001). For example, a petitioner may use a section 2241 petition to challenge the computation of the sentence by prison officials, prison disciplinary actions, prison transfers, type of detention, the conditions of the facility in which the prisoner is housed, and parole decisions. *Jiminian,* 245 F.3d at 146.  *See also Levine v. Apker*, 455 F.3d 71, 77-78 (2d Cir. 2006).

Here, Petitioner asks that the Court order FCI Ray Brook officials to remove the points assessed for his 1995 assault charge. Dkt. No. 1, Mem. at 7-8. Since Petitioner is challenging an allegedly erroneous custody classification, his claims relate to the conditions of confinement and may be properly brought pursuant to section 2241. *See Jennings v. United States*, No. 08-CV-3661, 2009 WL 1230317, at *4 (S.D.N.Y. Apr. 29, 2009)(section 2241 petition proper where the petitioner's claims included a challenge to an "alleged erroneous security level classification")(citing *Jiminian*, 245 F.3d at 146 and *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 n. 5 (2d Cir. 1991)); *Pastrana v. Nalley*, No. 03-CV-0302, 2007 WL 952061, at *6

(N.D.N.Y. Mar. 29, 2007)(Kahn, J., adopting Rep. - Rec. by Treece, M.J.)(denying section 2241 petition brought by a federal petitioner claiming that the BOP used "the PSR's obstruction of justice notation to enhance his custody classification thereby preventing him from entering a 500 hour drug program, which inevitably deprived him of the opportunity to receive a one-year reduction in his sentence."); *McIlwain v. Nalley*, No. 02-CV-1046, 2008 WL 355623, at *5 (N.D.N.Y. Feb. 7, 2008)(Scullin, J. adopting Rep. - Rec. by Bianchini, M.J.)(claim that the BOP should be directed to reduce the petitioner's security designation and transfer him to a facility closer to home was properly raised in a section 2241 petition).

It is well-settled that Congress has given federal prison officials "full discretion" to control "prisoner classification." *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976); *see* 18 U.S.C. § 3621 (b); *United States v. Williams*, 65 F.3d 301, 307 (2d Cir. 1995) (stating that a sentencing court "has no authority to order that a convicted defendant be confined in a particular facility, much less placed in a particular treatment program; those decisions are within the sole discretion of the Bureau of Prisons"); *Bagarozy v. Wiley,* No. 98-CV-1845, 1999 WL 33504439, at *3 n. 7 (N.D.N.Y. Oct. 26, 1999)(Sharpe. M.J.)("Prisoners have no statutory or constitutional entitlement sufficient to invoke due process for prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement."). As a result, absent a showing that the challenged confinement imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or that the BOP's action "will inevitably affect the duration of his sentence," prisoners like Petitioner do not have a constitutionally protected liberty interest under the Federal Constitution in prisoner

classifications in the federal prison system. *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995); *see Moody,* 429 U.S. at 88 n. 9; *Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir. 1980); *Pastrana,* 2007 WL 952061, at *6. The Second Circuit has also noted that "judicial intervention into the classification of prisoners for monitoring and control purposes would almost inevitably involve the federal courts in the day-to-day operations of our prison system, which are better left to the expertise of prison administration authorities." *Pugliese*, 617 F.2d at 925.

Here, Petitioner has made no showing that his classification to a medium security facility resulted in a significant hardship in the ordinary incidents of prison life or that it will affect the duration of his confinement. *Sandin,* 515 U.S. at 487. Thus, the BOP's decision to assess points against Petitioner based upon the 1995 assault conviction for classification and designation purposes does not constitute a violation of his Constitutional rights because he has "no liberty interest in the classification received at the institution [.]" *Pastrana*, 2007 WL 952061, at *7 (dismissing habeas petition challenging custody classification because federal petitioner had no liberty interest in the classification).

Petitioner also has not demonstrated that the BOP abused its discretion in calculating his custody classification score, which was calculated in accordance with BOP Program Statement 5100.08, Inmate Security Designation and Custody Classification. *See* Dkt. No. 8-1, Declaration at 1-5; Dkt. No. 8-1, Declaration at 4; Dkt. No. 8-1, Ex. A, Ch. 6 at 7; *See McIlwain*, 2007 WL 355623, at *5 (denying habeas relief where the petitioner failed to establish that the BOP classification was "arbitrary or capricious" and he did not demonstrate "any clear entitlement or right to be relocated to a particular correctional facility").

Accordingly, Petitioner is not entitled to habeas relief and the petition is denied and dismissed.

**WHEREFORE**, after reviewing Petitioner's submissions and the relevant law, and for the reasons stated herein, it is

**ORDERED**, that Petitioner's petition for a writ of habeas corpus (Dkt. No. 1) is **DENIED and DISMISSED;** and it is

**ORDERED**, that no certificate of appealability shall issue because Petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); and it is

**ORDERED**, that the Clerk of the Court shall serve a copy of this Order upon Petitioner and Respondent in accordance with the Local Rules.

Dated: January 26, 2010

*[signature]*

Thomas J. McAvoy
Senior, U.S. District Judge